**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

APPLICATION OF PAYWARD OCEANIC
LTD. FOR AN ORDER UNDER 28 U.S.C.
§ 1782 TO CONDUCT DISCOVERY FOR USE
IN A FOREIGN PROCEEDING

Case No.: _____

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION**
**FOR AN ORDER UNDER 28 U.S.C. § 1782 TO CONDUCT**
**DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

**BOIES SCHILLER FLEXNER LLP**

Renee Zaytsev
Geoffrey J. Derrick
Julia A. Bevan
55 Hudson Yards
New York, NY 10001
Tel: 212-446-2300
rzaytsev@bsfllp.com
gderrick@bsfllp.com
jbevan@bsfllp.com

*Attorneys for Petitioner Payward Oceanic Ltd.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .............................................................................................................. 2

    A.    The PowerTrade Respondents Unilaterally Strip Payward's
        PowerTrade Account of More than $6 Million of Value. ................................... 3

    B.    Payward Commences the DIFC Proceeding and Obtains a
        Worldwide Freezing Order Against the PowerTrade Respondents. ................... 5

    C.    Payward Intends to Commence the BVI Proceeding and
        Will Seek a Worldwide Freezing Order From the BVI Court............................. 6

    D.    The Limited Discovery Sought. ......................................................................... 7

ARGUMENT.................................................................................................................... 8

    I.    THE COURT IS AUTHORIZED TO GRANT PAYWARD'S § 1782 REQUEST........ 9

    A.    Each of the Discovery Targets is Found in this District....................................... 9

    B.    The Discovery Sought is For Use in a Foreign Proceeding. .............................. 11

    C.    Payward is an "Interested Person." .................................................................. 13

    II.    THE COURT SHOULD GRANT PAYWARD'S § 1782 REQUEST. ........................ 14

    A.    The Discovery Targets Are Not Participants in the Foreign Proceedings.......... 14

    B.    The DIFC and BVI Courts are Receptive to U.S. Judicial Assistance............... 15

    C.    The Application Does Not Circumvent Any Proof-Gathering Restrictions....... 16

    D.    The Discovery Payward Seeks is Narrowly Tailored and Not Burdensome...... 17

CONCLUSION................................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................... 14

*Application of Esses*,
    101 F.3d 873 (2d Cir. 1996) ................................................................................... 15

*Application of Gianoli Aldunate*,
    3 F.3d 54 (2d Cir. 1993) ........................................................................................ 17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ........................................................................ 8, 9, 11, 13

*Ecoprivate Bus. Ltd. v. The Clearing House Payments Co., L.L.C.*,
    2023 WL 4848516 (July 28, 2023) .......................................................................... 10

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ................................................................................... 15

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ............................................................................. 19

*In re Abraaj Investment Management Limited*,
    2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) ......................................................... 9, 10

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................................................... 17

*In re Alghanim*,
    2018 WL 2356660 (S.D.N.Y. May 9, 2018) ......................................................... 13, 16

*In re Application of Hornbeam Corp.*,
    2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ........................................................... 17

*In re Aso*,
    2019 WL 2345443 (S.D.N.Y. June 3, 2019*)* ........................................................... 10

*In re Belparts Grp., N.V.*,
    2021 WL 4942134 (D. Conn. Oct. 22, 2021) ........................................................... 17

*In re Byrne*,
    2023 WL 3203811 (S.D.N.Y. May 2, 2023) .............................................................. 9

*In re del Valle Ruiz*,
    939 F. 3d 520 (2d. Cir. 2019) ........................................................................ 9, 10, 11

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002) ........................................................................... 9

*In re Ex Parte Application of SBK Art LLC*,
   2024 WL 4264893 (S.D.N.Y. July 30, 2024) ........................................................ 11

*In re GMJ Asset Mgmt. Co., Inc.*,
   2022 WL 4547445 (S.D.N.Y. Sept. 29, 2022)........................................................ 10

*In re Golden Meditech Holdings Ltd.*,
   2024 WL 1349135 (S.D.N.Y. Mar. 29, 2024) ........................................................ 10

*In re Hornbeam Corp.*,
   2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015)....................................................... 19

*In re Hornbeam Corp.*,
   722 F. App'x 7 (2d Circuit 2018) ...................................................................... 16

*In re Inv. Bank PSC*,
   567 F. Supp. 3d 449 (S.D.N.Y. 2021) .................................................................. 9

*In re Iraq Telecom Ltd.*,
   2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019)................................................. passim

*In re JSC BTA Bank*,
   577 F. Supp. 3d 262 (S.D.N.Y. 2021) .............................................................. 9, 12

*In re MacDonell*,
   2017 WL 6448050 (E.D. Cal. Dec. 15, 2017) ....................................................... 18

*In re Martinez*,
   2024 WL 5402058 (S.D.N.Y. Nov. 1, 2024)......................................................... 10

*In re Sri Trang Gloves (Thailand) Pub. Co. Ltd.*,
   2025 WL 2411137 (S.D.N.Y. Aug. 20, 2025)................................................... 10, 12

*In re Tethyan Copper Co. Pty. Ltd.*,
   2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022) .................................... 13, 14, 16, 17

*In re Zouzar Bouka; Vision Indian Ocean S.A.*,
   637 F. Supp. 3d 74 (S.D.N.Y. 2022) ................................................................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)............................................................................... passim

*Kiritchenko v. Citicorp N. Am., Inc*,
   2024 WL 1946666 (C.D. Cal. Apr. 1, 2024) ........................................................ 10

iii

*Matter of Degens*,
 2020 WL 4252725 (S.D.N.Y. July 24, 2020) .......................................................................... 10

*Mees v. Buiter*,
 793 F.3d 291 (2d Cir. 2015) ....................................................................................... 11, 18

*Strike 3 Holdings, LLC v. Doe*,
 2020 WL 5992346 (S.D.N.Y. Oct. 9, 2020) .......................................................................... 19

**Statutes**

28 U.S.C. § 1782 .................................................................................................................... passim

**Rules**

Fed. R. Civ. P. 45 ....................................................................................................................... 19

Petitioner Payward Oceanic Ltd. ("Payward") respectfully moves for an *ex parte* order pursuant to 28 U.S.C. § 1782 granting Payward leave to serve document subpoenas on certain correspondent banks, clearing houses, and credit card companies set forth in Schedule A hereto (together, the "Discovery Targets") for use in two foreign proceedings—one that is currently pending in the Dubai International Financial Centre ("DIFC") and one that Payward intends to commence in the British Virgin Islands ("BVI").

## PRELIMINARY STATEMENT

Payward brings this Section 1782 application to obtain discovery in aid of two foreign proceedings against the entities and individuals behind the trading platform known as "PowerTrade" (together, the "PowerTrade Respondents"). As described further below, the PowerTrade Respondents have improperly stripped more than $6 million from Payward's PowerTrade account through a series of highly unusual, unauthorized transactions. These unauthorized transactions included retroactively canceling Payward's profitable trades that had closed or settled months earlier as part of a scheme to manufacture a negative balance in Payward's trading account and use this artificial "debt" as a pretext to abscond with Payward's collateral.[1]

In May 2026, Payward commenced a proceeding before the DIFC courts (the "DIFC Proceeding") and obtained a worldwide freezing order on the assets of the PowerTrade Respondents. Payward is also in the process of bringing claims against the PowerTrade Respondents in the BVI, where Payward is incorporated (the "BVI Proceeding," and together with the DIFC Proceeding, the "Foreign Proceedings"). As part of the BVI Proceeding, Payward intends to seek similar injunctive relief to freeze the PowerTrade Respondents' assets.

---

[1] No Payward client funds have been lost or placed at risk.

1

Through this Section 1782 action, Payward seeks to obtain certain bank and credit card records from U.S.-based correspondent banks, clearing houses, and credit card companies. These records will, among other things, help Payward determine whether the PowerTrade Respondents have transferred assets to or are hiding assets with affiliates, nominees, or other third parties. This information will, in turn, allow Payward to identify persons or entities to which it should provide notice of or seek to have included in the freezing orders and/or to identify additional respondents to the BVI Proceeding, such as the recipients of fraudulent transfers. Additionally, the discovery will allow Payward to verify statements that the PowerTrade Respondents are or will be required to make in the Foreign Proceedings.

This application satisfies all three statutory requirements of Section 1782: the Discovery Targets are all found in this District, the evidence is for use in foreign proceedings in the DIFC and the BVI, and Payward is an interested person in those proceedings. Likewise, each of the discretionary factors supports the Court's exercise of its discretion to grant this application: the Discovery Targets are not parties to the Foreign Proceedings, the DIFC and BVI courts generally welcome Section 1782 assistance, the application does not violate DIFC or BVI proof-gathering restrictions, and the scope of the discovery sought by Payward is not burdensome.

Payward respectfully requests that the Court grant *ex parte* relief by entering the accompanying Proposed Order, which will authorize the issuance of the proposed subpoenas and set a schedule to resolve any objections. *Ex parte* orders are routinely granted in Section 1782 proceedings and do not violate the Discovery Targets' due process rights because they remain free to challenge the discovery requests once the subpoenas are served.

## BACKGROUND

The following facts are taken from the accompanying Declaration of Renee Zaytsev dated June 25, 2026 (the "Zaytsev Decl.") and the exhibits annexed thereto; the Declaration of David

Holman Hunt dated June 25, 2026 and the exhibits annexed thereto (the "Hunt Decl."); the Declaration of Rosalind Nicholson dated June 25, 2026 (the "Nicholson Decl."); and the Affidavit of Jeff Everson dated May 21, 2026, which was submitted in the DIFC Proceeding and is annexed as Exhibit 1 to the Hunt Decl. (the "Everson Aff.").

### A. The PowerTrade Respondents Unilaterally Strip Payward's PowerTrade Account of More than $6 Million of Value.

Payward, d/b/a Kraken, operates one of the world's largest, safest, and most popular digital asset exchanges in the world. In or around late 2022, Payward opened a trading account with PowerTrade, a cryptocurrency derivatives trading platform, for the purpose of engaging in institutional cryptocurrency derivatives trading. (Everson Aff. ¶¶ 8, 20). Mario Gomez Lozada and Bernd Sischka have held themselves out as PowerTrade's co-founders and as its Chief Executive Officer and Chief Commercial Officer, respectively. (*Id.* ¶ 19). PowerTrade operated through various entities, including Power Fintech LLC (an entity formed in St. Vincent and the Grenadines) and Constellation Technologies S.A.S. de C.V. (an entity formed in El Salvador). (*Id.* ¶¶ 16–17). Gomez Lozada, Sischka, Power Fintech, and Constellation comprise the "PowerTrade Respondents."[2]

As required by PowerTrade's terms of service, Payward funded its PowerTrade account with collateral including USD Coin (a stablecoin pegged to the U.S. dollar on a 1:1 basis) and Bitcoin. (Everson Aff. ¶ 28). As of May 7, 2026, Payward's PowerTrade account reflected the following:

- Bitcoin collateral of 24.9978 Bitcoin (worth approximately USD $1.95 million at that time);

- USD Coin collateral of approximately $513,674; and

---

[2] Payward may also assert claims and seek relief against additional entities and individuals associated with PowerTrade, Gomez Lozada, and Sischka.

3

- Approximately $3,653,299.54 of material unrealized gains on Payward's open Bitcoin options positions.

(*Id.* ¶¶ 29, 50).

In or around October 2025, the cryptocurrency markets experienced a decline, and the price of Bitcoin fell precipitously. (*Id.* ¶ 40). Given the market volatility, Payward grew concerned about PowerTrade's liquidity and creditworthiness. (*Id.* ¶ 41). Payward thus sought to withdraw Bitcoin from its PowerTrade account, as it was entitled to do. (*Id.*). Over the ensuing months, Payward made multiple requests to withdraw its Bitcoin, culminating in a March 4, 2026 demand for the return of all assets in its PowerTrade account. (*Id.* ¶¶ 41–44). However, other than an initial test withdrawal of approximately 0.001 Bitcoin, PowerTrade refused to honor Payward's demands. (*Id.* ¶¶ 42, 44(h)). Among other reasons, PowerTrade representatives indicated that the platform was experiencing liquidity issues. (*Id.* ¶¶ 43, 44(a)).

Rather than return Payward's assets, on May 7 and May 8, 2026, PowerTrade effectuated a series of unilateral and unauthorized transactions in Payward's account, the effect of which was to move the account from substantial positive equity of more than $6 million to a negative balance of nearly $2 million. (*Id.* ¶ 54).

These transactions were not only unauthorized but also highly unusual. For example, at exactly 01:37 UTC on May 7, 2026, PowerTrade applied a single block of approximately 100 "correction" and 100 "correction_fee" ledger entries, all stamped at the same instant. (*Id.* ¶¶ 55, 56). A large block of these purported "corrections" related to trades that had expired or settled months earlier. (*Id.* ¶ 56). The transactions in effect retroactively canceled and revalued these closed trades, with the effect of reducing the equity in Payward's account by nearly $700,000, plus a deduction of approximately $130,000 in fee corrections. (*Id.* ¶¶ 53(a), 56(a)). Multiple "correction" entries also reflected the instrument in question as "unknown." (*Id.* at ¶ 56(b)). These "unknown"

correction entries further reduced the equity in the account by approximately $1.65 million, plus approximately $34,000 in fee corrections. (*Id.*).

Several hours later, at 13:45 UTC on May 7, 2026, PowerTrade forced an unnecessary and unauthorized liquidation of Payward's open Bitcoin option positions at prices materially below their intrinsic mark-to-market value. (*Id.* ¶ 61). For example, PowerTrade liquidated Payward's in-the-money put options at prices that were approximately 85%–90% below their intrinsic value—an action that made no commercial sense. (*Id.* ¶ 62). As a result of this unauthorized forced liquidation, PowerTrade further reduced Payward's account balance by more than $4.2 million, taking the account to a materially negative balance. (*Id.* ¶ 63).

Payward was not notified of these transactions and only discovered them days later when it checked on its position. (*Id.* ¶ 53). In total, PowerTrade's unauthorized activity resulted in a net detriment to Payward of $6,146,666.66. (*Id.* ¶¶ 55–63, 69).

### B.   Payward Commences the DIFC Proceeding and Obtains a Worldwide Freezing Order Against the PowerTrade Respondents.

On May 21, 2026, Payward commenced a proceeding in the DIFC against the PowerTrade Respondents seeking a worldwide freezing order to prevent the dissipation of assets. (Hunt Decl. ¶ 5). Specifically, Payward was concerned that PowerTrade would rely on the "debt" it had artificially created to appropriate Payward's Bitcoin collateral. (Everson Aff. ¶ 73). Payward had reason to believe that certain Bitcoin it had deposited with PowerTrade was being held in a wallet maintained by ByBit, a cryptocurrency exchange headquartered in the Dubai World Trade Center. (*Id.* ¶ 74).

On May 22, 2026, H.E. Justice Michael Black of the DIFC courts granted an interim freezing order and directed the PowerTrade Respondents to make certain disclosures regarding their assets (the "DIFC Freezing Order"). (Hunt Decl. Ex. 2). A hearing on Payward's request to continue the DIFC Freezing Order was held on June 12, 2026. (Hunt Decl. ¶ 9).

On June 23, 2026, Justice Black informed Payward that he would continue the DIFC Freezing Order pursuant to certain terms, including that Payward commence substantive proceedings in the BVI and "as quickly as possible seek relief in the same terms as this Injunction." (*Id.*)

None of the Discovery Targets is a party to the DIFC Proceeding. (*Id.* ¶ 10).

**C.      Payward Intends to Commence the BVI Proceeding and Will Seek a Worldwide Freezing Order From the BVI Court.**

Payward also intends to bring claims against the PowerTrade Respondents in the BVI, where Payward is incorporated, based on the alleged misconduct described above. Payward has already retained counsel in connection with the BVI Proceeding and has instructed counsel to prepare a Statement of Claim. (Nicholson Decl. ¶ 6). The claims that Payward anticipates asserting in the BVI Proceeding include, but are not limited to, (i) a claim for breach of contract against Power Fintech LLC; and (ii) claims against each of Constellation Technologies S.A.S. de C.V., Bernd Sischka, and Mario Gomez Lozada, for (a) unlawful means conspiracy by their concerted actions in carrying out the unauthorized activity on Payward's trading account, in breach of the exchange's terms, at a time when Power Fintech LLC was a dissolved company; and (b) inducing Power Fintech LLC to act in breach of its contractual obligations towards Payward, in circumstances where each of the parties knew of the relevant contract terms, intended Power Fintech LLC to breach those terms, and were integral in carrying out the actions that caused Payward's losses. (*Id.* ¶ 7).

As part of the BVI Proceeding, Payward also intends to seek a freezing order with respect to the PowerTrade Respondents' worldwide assets, similar to the relief obtained in the DIFC Proceeding (the "BVI Freezing Order," and together with the DIFC Freezing Order, the "Freezing Orders"). Pursuant to Payward's instructions, counsel has already begun preparing the draft papers

necessary to obtain such relief. (*Id.* ¶ 10).

None of the Discovery Targets will be a party to the BVI Proceeding. (*Id.* ¶ 11).

### D.   The Limited Discovery Sought.

Payward seeks urgent discovery in order to, among other things, identify assets held by the PowerTrade Respondents before they can be dissipated or concealed, and/or to identify the whereabouts of assets that may have already been fraudulently transferred to others.

Exhibits 1 through 12 to the Zaytsev Declaration are the proposed subpoenas that Payward seeks to serve on U.S.-based banks, clearing houses, and credit card companies. These subpoenas seek narrowly-tailored discovery of bank and credit card records concerning any assets, accounts, or transfers to or from the PowerTrade Respondents or entities related to them. Specifically, Payward seeks the PowerTrade Respondents' U.S.-dollar-denominated wire transfer records from the bank Discovery Targets and the Respondents' credit card records from the remaining Discovery Targets.

The bank and wire transfer records are relevant because they will help determine whether the PowerTrade Respondents have transferred assets to or are hiding assets with affiliates, nominees, or other third parties—information that can be used to identify individual or entities that need to be notified of the Freezing Orders or added as respondents to the BVI Proceeding. This information will also assist Payward in tracing any movement of the PowerTrade Respondents' assets to yet-unknown third-parties, and discovering undisclosed assets. The credit card records will also provide insight into the geography of the PowerTrade Respondents' transactions and what bank accounts their payments are linked to, which likewise would assist in identifying any new targets for the Freezing Orders and additional respondents in the BVI Proceeding.

Additionally, as part of the DIFC Freezing Order, the PowerTrade Respondents were ordered to provide disclosure of their worldwide assets—relief that Payward also intends to seek as

part of the BVI Freezing Order. (Hunt Decl. ¶ 8; Nicholson Decl. ¶ 13). The requested discovery will thus also assist in verifying statements required to be made by the PowerTrade Respondents in the Foreign Proceedings.

## **ARGUMENT**

Section 1782 empowers this Court to assist foreign litigants in obtaining evidence for use in their foreign proceedings. "[A] district court is authorized to grant a § 1782 request where (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (cleaned up).

"Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Id.* In exercising this discretion, courts may consider factors such as (i) whether the discovery target is a participant in the foreign proceeding; (ii) the nature of the foreign tribunal and the receptivity of the foreign court to U.S. judicial assistance; (iii) whether the application seeks to circumvent foreign proof gathering restrictions or other policies; and (iv) the burden of producing the documents sought. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). The Court should also consider "the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn*, 673 F.3d at 81.

As set forth below, Payward's request satisfies all three statutory requirements for the Court to have authority to grant this Section 1782 application. Further, each of the *Intel* factors weighs strongly in favor of the Court exercising its discretion to do so.

8

**I.     THE COURT IS AUTHORIZED TO GRANT PAYWARD'S § 1782 REQUEST.**

As set forth below, Payward satisfies all three of the statutory requirements of 28 U.S.C. § 1782.

**A.     Each of the Discovery Targets is Found in this District.**

The first statutory requirement to grant a Section 1782 request is that "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." *Brandi-Dohrn*, 673 F.3d at 80. Section 1782 "supports a flexible reading of the phrase 'resides or is found.'" *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) (quoting 28 U.S.C. § 1782(a)). It "extends to the limits of personal jurisdiction consistent with due process" and is satisfied if a respondent transacts business within the district and the "discovery material sought proximately resulted from the respondent's forum contacts." *In re del Valle Ruiz*, 939 F. 3d 520, 527, 530 (2d. Cir. 2019) (cleaned up); *see also In re Inv. Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (finding correspondent bank that processes US-dollar-denominated wire transactions "is found" in New York because it "does business in . . . the Southern District of New York"); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021) (same).

Courts in this district frequently grant Section 1782 applications from discovery subjects that "regularly transact business" in New York and "maintain an office or branch" there. *See In re Abraaj Investment Management Limited*, 2023 WL 2674752, at *3–6 (S.D.N.Y. Mar. 29, 2023) (cleaned up) (conducting specific and general personal jurisdiction analysis for various financial institutions and determining that entities that regularly transact business in the Southern District of New York and have corporate offices in this District are "found" here); *see also In re Byrne*, 2023 WL 3203811, at *5 (S.D.N.Y. May 2, 2023) (ordering discovery from several financial institutions that maintained offices and conducted business in New York).

Here, Payward seeks to serve subpoenas on seven banks and clearing houses, each of which

has already been held to be "found" in this District in prior cases. *See, e.g.*, *In re Golden Meditech Holdings Ltd.*, 2024 WL 1349135, at *4 (S.D.N.Y. Mar. 29, 2024) (BNY Mellon and Citibank); *Ecoprivate Bus. Ltd. v. The Clearing House Payments Co., L.L.C.*, 2023 WL 4848516, at *2 (July 28, 2023) (CHIPS); *In re GMJ Asset Mgmt. Co., Inc.*, 2022 WL 4547445, at *3 (S.D.N.Y. Sept. 29, 2022) (Federal Reserve Bank); *In re Aso*, 2019 WL 2345443, at *1–3 (S.D.N.Y. June 3, 2019) (BOA); *In re Martinez*, 2024 WL 5402058, at *3 (S.D.N.Y. Nov. 1, 2024) (Standard Chartered); *Matter of Degens*, 2020 WL 4252725, at *4 (S.D.N.Y. July 24, 2020) (Wells Fargo).

Likewise, each of the five credit card companies that Payward seeks to subpoena are also "found" in this District. Two of them have their headquarters in New York and have already been held to be "found" here in prior cases. *Golden Meditech*, 2024 WL 1349135 at *4 (JPMorgan); *In re Sri Trang Gloves (Thailand) Pub. Co. Ltd.*, 2025 WL 2411137, at *2 (S.D.N.Y. Aug. 20, 2025) (American Express). The remaining three all maintain corporate offices and in some cases ATMs in this District, which are sufficient for them to be "found" here. *See, e.g.*, *Abraaj Investment*, 2023 WL 2674752 at *5; *Kiritchenko v. Citicorp N. Am., Inc*, 2024 WL 1946666, at *3, 3 n.5 (C.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 3086240 (C.D. Cal. June 18, 2024). Specifically, Mastercard's global headquarters are in this District,[3] and Capital One and Visa both have a corporate office and numerous ATMs in this District.[4]

Finally, "the discovery material sought proximately result[s] from the respondent's forum contacts" such that there are contacts "sufficient to establish specific jurisdiction for ordering discovery." *Valle Ruiz*, 939 F. 3d at 530. Payward seeks wire transfer and credit card records, which

---

[3] *See* Global Locations, MASTERCARD, *available at* https://www.mastercard.com/us/en/for-the-world/about-us/global-locations.html.

[4] *See* Jobs in New York, CAPITAL ONE, *available at* https://www.capitalonecareers.com/new-york (corporate office in this District); Locations Finder, CAPITAL ONE, *available at* https://tinyurl.com/yc35m4uy (ATMs in this District); Careers, VISA, *available at* https://www.visa.com/en-us/careers (corporate office in this District); ATM Locator, VISA, *available at* https://www.visa.com/locator/atm?country=US (ATMs in this District).

"arise[] out of or relate[] to" the Discovery Targets' contacts with this District. *Id.* at 529. The bank Discovery Targets generate wire transfer records as a direct result of processing U.S.-dollar-denominated transactions through their New York-based clearing operations, which is the very activity that makes them "found" in this District. Likewise, the credit card Discovery Targets create and maintain records of cardholders' transactions as part of their ongoing business operations headquartered in or conducted from this District.

**B.     The Discovery Sought is For Use in a Foreign Proceeding.**

The second statutory requirement to grant a Section 1782 request—that "the discovery is for use in a foreign proceeding before a foreign tribunal"—is also readily satisfied. *Brandi-Dohrn*, 673 F.3d at 80.

The "for use" prong is satisfied so long as the discovery will be "employed with some advantage or serve some use in the [foreign] proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). The discovery "need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement." *Id.* Likewise, "§ 1782 contains no foreign-discoverability requirement." *Id.* at 303; *see also Intel*, 542 U.S. at 259–60 (holding that § 1782 does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction."). And, just "as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn*, 673 F.3d at 82; *see also In re Ex Parte Application of SBK Art LLC*, 2024 WL 4264893, at *8 (S.D.N.Y. July 30, 2024), *report and recommendation adopted in full*, 2025 WL 1537474 (S.D.N.Y. May 30, 2025), *aff'd*, 168 F.4th 68 (2d Cir. 2026) (same).

Here, the discovery Payward seeks will be useful to two foreign proceedings—one that is

11

currently pending in the DIFC and another that Payward intends to file in the BVI. As detailed above, the bank and credit card records Payward seeks will help identify persons or entities to which it should provide notice of or seek to have included in the Freezing Order; show whether the PowerTrade Respondents have transferred assets to or are hiding assets with affiliates, nominees, or other third parties; allow Payward to identify potential recipients of fraudulent transfers; identify potential additional respondents to the BVI Proceeding; and assist Payward in verifying statements the PowerTrade Respondents are or will be required to make in the Foreign Proceedings.

Courts in this District have granted Section 1782 applications for similar records under similar circumstances. *See, e.g.*, *Sri Trang*, 2025 WL 2411137 at *2 (granting § 1782 application seeking "the production of assets, accounts, or transfers to or from the Defendants from CHIPS as well as credit card purchase and payment histories from American Express," which "will assist [applicant] in locating the assets of [the respondents], identifying the entities that may be subject to or notified of the freezing order entered by the Singapore High Court, and verifying the statements [respondent] will be required to make in the Singapore Proceeding."); *see also JSC BTA Bank*, 577 F. Supp. 3d at 266–67 (granting Section 1782 application in connection with enforcement of a worldwide freezing order).

Finally, each of the DIFC Proceeding and the BVI Proceeding qualifies as "a foreign proceeding before a foreign tribunal" as defined by Section 1782. The DIFC Proceeding, which was commenced in May, plainly meets the definition. *See In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *2–3, 5 (S.D.N.Y. Aug. 13, 2019) (granting § 1782 application based on DIFC litigation). As to the BVI Proceeding, the Supreme Court has confirmed that "[t]he 'proceeding' for which discovery is sought under § 1782(a) must be within reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel*, 542 U.S. at 243. While an anticipated proceeding "cannot

12

be merely speculative," it is sufficient so long as there is "some objective indicium that [legal] action is being contemplated." *In re Alghanim*, 2018 WL 2356660, at *3 (S.D.N.Y. May 9, 2018) (granting § 1782 application based on an "anticipated claim" in the BVI) (citation omitted); *see also In re Tethyan Copper Co. Pty. Ltd.*, 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) (granting Section 1782 application "to obtain discovery for use in a contemplated civil proceeding in the British Virgin Islands").

Here, the BVI Proceeding is far from speculative. Payward has already hired counsel and instructed that counsel to begin preparing a Statement of Claim as well as the papers necessary to seek the BVI Freezing Order. (Nicholson Decl. ¶¶ 6, 10). Payward's counsel has already evaluated the anticipated causes of action, including claims for breach of contract, unlawful means conspiracy, and inducement of breach of contract. (*Id.* ¶ 7). *See Alghanim*, 2018 WL 2356660 at *3 (holding that applicant satisfied "for use" element based on anticipated BVI proceedings where, among other things, her attorney "elaborated on the types of claims she anticipated making"). Moreover, the DIFC court has conditioned the continuation of the DIFC Freezing Order on Payward initiating proceedings in the BVI to obtain similar injunctive relief "as quickly as possible," a requirement with which Payward intends to comply. (Hunt Decl. ¶ 9). Therefore, the BVI Proceedings are certainly more than "just a twinkle in counsel's eye." *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F. Supp. 3d 74, 85 (S.D.N.Y. 2022), *modified on reconsideration on other grounds sub nom. In re Bouka*, 654 F. Supp. 3d 283 (S.D.N.Y. 2023).

### C.     Payward is an "Interested Person."

Finally, as a party to the Foreign Proceedings, Payward is an "interested person" under Section 1782, thus satisfying the third statutory requirement to grant a Section 1782 application. *Brandi-Dohrn*, 673 F.3d at 80. The Supreme Court explained in *Intel* that "litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke

13

§ 1782." 542 U.S. at 256; *see also Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (quoting *Intel*, 542 U.S. at 256) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782."); *Tethyan Copper*, 2022 WL 1266314 at *1 (finding that petitioner is an "interested party" regarding its "contemplated civil proceeding in the British Virgin Islands").

## II.    THE COURT SHOULD GRANT PAYWARD'S § 1782 REQUEST.

As discussed above, because Payward has met each of the statutory requirements under Section 1782, the Court is authorized to grant this application. As discussed below, because each of the four *Intel* factors weighs heavily in favor of granting Payward's Section 1782 application, the Court should exercise its discretion to do so.

### A.    The Discovery Targets Are Not Participants in the Foreign Proceedings.

The first *Intel* factor weights in favor of granting Payward's application because none of the Discovery Targets is a participant in the DIFC Proceeding or will be a participant in the BVI Proceeding. (Hunt Decl. ¶ 10; Nicholson Decl. ¶ 11). The U.S. Supreme Court has explained that "when the person from whom discovery is sought is a participant in the foreign proceeding, . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because, in the former case, the "foreign tribunal . . . can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

The fact that the Discovery Targets are not participants in the Foreign Proceedings weighs in favor of granting Payward's Section 1782 request. *See Iraq Telecom*, 2019 WL 3798059 at *4 (finding first *Intel* factor satisfied and granting § 1782 motion where "the correspondent banks [we]re not parties to … the DIFC litigation"); *Tethyan Copper*, 2022 WL 1266314 at *2 (finding

14

first *Intel* factor satisfied where the discovery subjects "are not parties to the [contemplated] BVI Litigation").

### B.        The DIFC and BVI Courts are Receptive to U.S. Judicial Assistance.

The second *Intel* factor, which looks to "the nature of the foreign tribunal and its receptiveness to U.S. federal court assistance," also weighs in favor of granting Payward's application. *Iraq Telecom*, 2019 WL 3798059 at *2.

As the Second Circuit has instructed, "only upon 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782,' should a district court refrain from granting the assistance offered by the act." *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (citation omitted); *see also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, [Section 1782's] underlying policy should generally prompt district courts to provide some form of discovery assistance.").

Here, there is no reason to believe that the DIFC court would reject the requested discovery. To the contrary, the DIFC courts apply English Common Law principles, which allow for the use of discovery obtained from Section 1782 applications. (Hunt Decl. ¶¶ 17–20). Further, DIFC Courts Rule 30.65 is a similar mechanism to Section 1782 and provides for the DIFC court to respond to requests from foreign courts for evidence. (*Id.* ¶ 16). Given that DIFC courts will respond to foreign evidence requests, there is no reason to believe that the DIFC court would reject evidence obtained from a foreign evidence request. (*Id.*); *Iraq Telecom*, 2019 WL 3798059 at *4 (citing evidence of DIFC Courts Rule 30.65 in favor of second *Intel* factor). The DIFC courts' receptiveness is further underscored by a joint "Memorandum of Guidance" issued by the DIFC courts and this District Court, which sets forth the two courts' "desire and belie[f]" in "cooperation" to "promote the mutual

15

understanding of their laws and judicial processes."[5]

Similarly, BVI courts are generally receptive to discovery obtained through Section 1782 applications. Indeed, BVI case law indicates that Section 1782 discovery is treated as part of the normal evidentiary record. (Nicholson Decl. ¶ 17–19). Additionally, BVI courts also receive requests for discovery sought in aid of foreign proceedings and have ordered BVI discovery in such circumstances. (*Id.* ¶ 20). There is therefore no indication, let alone authoritative proof, that BVI courts would reject evidence acquired pursuant to a Section 1782 application. (*Id.* ¶ 22). Moreover, Section 1782 applications seeking discovery for use in the BVI are routinely granted. *See, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x 7, 10 (2d Cir. 2018) (summary order) (affirming order granting § 1782 application seeking discovery for use in BVI action); *Tethyan Copper*, 2022 WL 1266314 at *2 (granting § 1782 application seeking discovery for use in BVI action); *Alghanim*, 2018 WL 2356660 at *5 (same).

"In the absence of specific evidence that the DIFC courts . . . would reject [Payward's] requested discovery, th[e] second [*Intel*] factor also weighs in favor of granting the application." *Iraq Telecom*, 2019 WL 3798059 at *4. The same goes for the BVI. *Tethyan Copper*, 2022 WL 1266314 at *2 ("[T]here is no evidence that Petitioner is attempting to circumvent any proof-gathering restrictions imposed by BVI law.").

### C.     The Application Does Not Circumvent Any Proof-Gathering Restrictions.

The third discretionary factor examines if the discovery requests are merely an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "[T]he burden is on the opponent of a §1782 request to prove that

---

[5] Memorandum of Guidance between the DIFC Courts & United States District Court for the Southern District of New York (SDNY), DIFC Courts (Mar. 29, 2015), *available at* https://www.difccourts.ae/about/memoranda/judicial/mog-between-the-difc-courts-and-united-states-district-court-for-the-southern-district-of-new-york.

the foreign court would reject the evidence obtained through §1782." *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at \*4 (S.D.N.Y. Dec. 24, 2014). Payward is unaware of any restriction under DIFC or BVI law that would prohibit the requested discovery. (Hunt Decl. ¶ 13; Nicholson Decl. ¶ 14). Moreover, this Court does not need to "make a finding of discoverability under the laws of the foreign jurisdiction." *Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993). Instead, as noted above, the proper inquiry is whether "authoritative proof" exists that the DIFC and BVI courts "would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1099–1100. 1995). No such concern exists here. To the contrary, as discussed above, DIFC and BVI courts are receptive to evidence obtained in foreign proceedings.

Further, this is not a case where Payward is "impermissibly seeking a second bite at the apple" after failing to obtain discovery in the Foreign Proceedings. *Iraq Telecom*, 2019 WL 3798059 at \*5. Nor is Payward required to first attempt to obtain the requested discovery in the Foreign Proceedings because Section 1782 "imposes no exhaustion requirement." *Id.* (finding that third *Intel* factor weighed in favor of 1782 discovery for use in DIFC proceeding); *see also Tethyan Copper*, 2022 WL 1266314 at \*2 (finding "no evidence that Petitioner is attempting to circumvent any proof-gathering restrictions imposed by BVI law"). Absent any evidence of bad faith, the third discretionary factor weighs in favor of granting Payward's application. *See, e.g.*, *In re Belparts Grp., N.V.*, 2021 WL 4942134, at \*5–6 (D. Conn. Oct. 22, 2021) (finding third *Intel* factor met because no "evidence of bad faith from [applicant's] decision to seek § 1782 discovery"); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135–36 (2d Cir. 2017) (affirming application where no evidence of bad faith).

**D.    The Discovery Payward Seeks is Narrowly Tailored and Not Burdensome.**

Finally, the discovery sought by this application is not "unduly intrusive or burdensome," such that the fourth *Intel* factor also weighs in favor of granting Payward's request. *Intel*, 542 U.S.

17

at 265. This Court should determine "whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302.

Here, Payward's requests are limited to wire transfer and credit card records. These are narrowly tailored requests that bear directly on the scope and application of the Freezing Order. The requested bank and credit card records will help Payward identify and verify the PowerTrade Respondents' assets; shed light on incoming and outgoing wire transfers and the existence of other accounts used to pay the PowerTrade Respondents' debts; allow Payward to identify other institutions where the PowerTrade Respondents' assets may be held and/or affiliates, nominees, or other third parties who may be holding the PowerTrade Respondents' assets; assist in tracing the movement of any of the PowerTrade Respondents' assets; and uncover recipients of potential fraudulent transfers. This information will, in turn, allow Payward to provide notice of or expand the Freezing Orders to additional entities or individuals, identify additional respondents who may be added to the forthcoming BVI Proceeding, and verify statements required to be made in the Foreign Proceedings.

The requested discovery would not be unduly burdensome to the Discovery Targets as the requests are targeted in scope and the responsive records are of the type regularly maintained by and easily accessible to the Discovery Targets. *See, e.g.*, *In re MacDonell*, 2017 WL 6448050, at *4 (E.D. Cal. Dec. 15, 2017) (finding no undue burden in requests issued to bank pursuant to Section 1782 because "the universe of responsive documents is likely to be manageable and readily accessible to the subpoenaed entities"). Should there be any concern as to the scope or burden of the requests, Payward intends to meet and confer in good faith with the Discovery Targets to resolve them. Further, the Discovery Targets will remain free to "contest[] the subpoena[s] (including a

motion to quash or modify the subpoena)" once the subpoenas are served. *Strike 3 Holdings, LLC v. Doe*, 2020 WL 5992346, at *2 (S.D.N.Y. Oct. 9, 2020).[6]

## CONCLUSION

For the reasons stated above, Payward respectfully requests that this Court grant the Application in full on an *ex parte* basis.

---

[6] Because the Discovery Targets remain free to challenge the subpoenas after they are served, there is no due process concern raised by this *ex parte* application. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[T]he respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."). "District courts may and customarily do resolve applications for discovery pursuant to § 1782 through *ex parte* proceedings." *In re Hornbeam Corp.*, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015) (collecting cases), *aff'd* 722 F. App'x 7, 10-11 (2d Cir. 2018).

Dated: June 25, 2026
New York, NY

         **BOIES SCHILLER FLEXNER LLP**

/s/ *Renee Zaytsev*
Renee Zaytsev
Geoffrey J. Derrick
Julia A. Bevan
55 Hudson Yards
New York, NY 10001
Tel: 212-446-2300
gderrick@bsfllp.com
rzaytsev@bsfllp.com
jbevan@bsfllp.com

*Attorneys for Petitioner Payward Oceanic Ltd.*

## SCHEDULE A – DISCOVERY TARGETS

**Banks**

1. The Clearing House Payments Company LLC ("CHIPS")

2. The Bank of New York Mellon Corporation ("BNY Mellon")

3. Citibank N.A. ("Citibank")

4. Bank of America N.A. ("BOA")

5. Wells Fargo Bank, N.A. ("Wells Fargo")

6. Standard Chartered Bank ("Standard Chartered")

7. Federal Reserve Bank of New York ("Federal Reserve Bank")

**Credit Card Companies**

8. American Express Company ("AmEx")

9. JPMorgan Chase Bank, N.A. ("JP Morgan")

10. Capital One, N.A., ("Capital One")

11. Mastercard International Incorporated ("Mastercard")

12. Visa U.S.A., Inc. ("Visa")

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, I hereby certify that this document complies with applicable length limitations because, excluding the parts of the document exempted by Local Civil Rule 7.1(c), this document contains 5,995 words.

*/s/ Renee Zaytsev*
Renee Zaytsev
